UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA,                :

    -against-                                          :

                                    24 Cr. 204(GBD)

CAROLYN SCOTT,                               :
                     Defendant,          :
--------------------------------------------------------x


MEMORANDUN OF LAW  IN SUPPORT OF CAROLYN SCOTT'S MOTIONS


Esere J. Onaodowan, Esq.
Christine E. Delince, Esq.
Counsels for Carolyn Scott
The Law Offices of Onaodowan & Delince, PLLC
100 Church Street, 8th Floor
New York, NY 10007
718-427-3139
eonaodowan@eocdlaw.com

## TABLE OF CONTENTS

**Page**

Table of Authorities                                                                   3

Preliminary Statement and Statement of Issues Presented                                 7

Point I

    Motion to dismiss each count because they are duplicitous              8


Point II

    Motion to compel a bill of particulars                                14

Point III

    Motion to suppress out of court identification                        18


Conclusion                                                                            29

TABLE OF AUTHORITIES

CASES                                                                    Page

*United States v. McCourty*,                                             10
562 F.3d 458 (2d Cir. 2009)

*United States v. Murray*,                                              10, 11, 14
618 F.2d 892 (2d Cir. 1980)

*United States v. Aracri,*                                             10, 12, 13, 14
968 F.2d 1512 (2d Cir. 1992)

*United States v. Margiotta,*                                          11, 12, 13, 14
646 F.2d 729 (2d Cir. 1981)

*United States v. Sturdivant*,                                          11
244 F.3d 71 (2d Cir. 2001)

*United States v. Schmeltz*,                                            11
667 F.3d 685 (2d Cir. 2008)

*Apprendi v. New Jersey*,                                               12, 16
530 U.S. 466 (2000)

*Richardson v. United States*,                                         12
526 U.S. 813, (1999)

*United States v. Olmeda*,                                             12, 13
461 F.3d 271 (2d Cir. 2006)

*United States v. Tutino*,                                             11, 12
883 F.2d 1125 (2d Cir. 1989)

*United States v. Robinson*,                                          10, 12, 13
294 Fed. App'x. 630 (2d Cir. 2008)

*Brady v. Maryland*,                                                    14
373 U.S. 83 (1963)

*United States v. Agurs,*                                               14
427 U.S. 97 (1976)

*United States v. Kearney*,                                            14
444 F. Supp. 1290 (S.D.N.Y 1978)

*United States v. Bortnovsky*,                                                        15, 16
820 F.2d 572 (2d Cir. 1987)

*United States v. Santiago*,                                                          15
174 F.Supp.2d 16, 34 (S.D.N.Y. 2001)

*United States v. Panza*,                                                             15
750 F.2d 1141 (2nd Cir. 1984)

*United States v. Bin Laden*,                                                         15
92 F. Supp.2d 225 (S.D.N.Y. 2000)

*United States v. Murgio*,                                                            17
209 F. Supp. 3d 698 (S.D.N.Y. 2016)

*United States v. Siddiqi,*                                                           16
No. 06 CR. 377 SWK, 2007 WL 549420, at *2 (S.D.N.Y. Feb. 21, 2007)

*United States v. Lino*,                                                              16
No. 00 CR. 632 (WHP), 2001 WL 8356 (S.D.N.Y. Jan. 2, 2007).

*United States v. McGuinness,*                                                        16
764 F. Supp. 888 (S.D.N.Y.1991)

*United States v. Cannone*,                                                           17
528 F.2d 296 (2nd Cir. 1975))

*United States v. Turkish,*                                                           17
458 F. Supp. 874 (S.D.N.Y.1978)

*Manson v. Brathwaite*,                                                               18
42 U.S. 98, 114 (1997)

*Raheem v. Kelly*,                                                                    19, 20, 28
257 F.3d 122 (2d Cir. 2001)

*United States v. Perez*,                                                             19
248 F. Supp. 2d 111 (D. Conn. 2003)

*United States v. Tortora,*                                                           19
30 F.3d 334 (2d Cir.1994)

*Sumner v. Mata,*                                                                     19
455 U.S. at 597, 102 S.Ct. at 1306

*Jarrett v. Headley*,                                                                 19, 22
802 F.2d 34 (2d Cir. 1986)

*United States v. Wade*,                                          18, 19, 20, 21, 23, 36
388 U.S. 218 (1967)

*Stoval v. Denno*,                                               20
388 U.S. 293, 302 (1967)

*United States v. Maldonado–Rivera*,                            20
922 F.2d 934 (2d Cir. 1990)

*United States v. Chandler*,                                    21, 26
164 F. Supp. 3d 368 (E.D.N.Y. 2016)

*United States v. Archibald*,                                   21, 22
734 F.2d 938 (2d Cir. 1984)

*United Staes v Ikli*,                                          21
2017 WL 396681, at *3 (.S.D.N.Y. Jan. 26 2017)

*Watkins v. Sowders*,                                           21
449 U.S. 341, 345 (1981)

*United States v. Fernandez*,                                   22
456 F.2d 638 (2d Cir.1972)

*United States ex rel. Cannon v. Montanye*,                     22
486 F.2d 263 (2d Cir.1973)

*United States v. Eltayib*,                                     22, 25
88 F.3d 157 (2d Cir. 1996)

*United States v. McGee*,                                       23
No. 99-CR-150E, 2000 WL 1520957, at *2 (W.D.N.Y. Oct. 10, 2000)

*United States v. Thai*,                                        23
29 F.3d 785 (2nd Cir. 1994)

*Neil v. Biggers*,                                              23, 27, 28
409 U.S. 188 (1972)

*United States v. Rodriguez*,                                   25
No. 12-CR-45S, 2013 WL 6057862, at *1 (W.D.N.Y. Nov. 13, 2013)

*United States v. Wilson*,                                      26
493 F. Supp. 2d 364 (E.D.N.Y. 2006)

*United States v. Walia*,                                       26
No. 14-CR-213 MKB, 2014 WL 2533848, at *3 (E.D.N.Y. June 5, 2014)

*United States v. Nolan*,                                       27
956 F.3d 71 (2d Cir. 2020)

*Young v. Conway*,                                                    27
698 F.3d 69 (2d Cir. 2012)

*United States v. Shamsideen*,                                        29
No. 03 CR.1313(SCR), 2004 WL 1179305, at *9
(S.D.N.Y. Mar. 31, 2004)

<u>STATUTES</u>

18 U.S.C. § 666                                                       8

<u>OTHER AUTHORITIES</u>

Gilmore, 24-cr-127 (LJL)                                              11, 13

## PRELIMINARY STATEMENT

Carolyn Scott respectfully submits this memorandum of law in support of her motion to dismiss the indictment on the grounds of duplicity, or alternatively for an order directing the government to provide a bill of particulars. Ms. Scott also moves to suppress identification evidence or alternatively requests an evidentiary hearing.[1]

## FACTUAL BACKGROUND

Carolyn Scott was arrested on February 14, 2024, and charged by Complaint.[2] On April 4, 2024, Ms. Scott was indicted on two counts, Solicitation and Receipt of a Bribe by Agent of Organization Receiving Federal Funds and Extortion Under Color of Official Right.[3]

The Government alleges that between January 2020 through March 2023, Ms. Scott, an employee of the New York City Housing Authority ["NYCHA"] solicited and accepted bribes from NYCHA vendors in exchange for awarding those vendors no-bid contracts. Ms. Scott is alleged to have accepted at least $7,500 in bribes.

This memorandum addresses the legal deficiencies in the indictment and the need for further particulars. Specifically, the indictment should be dismissed as each count is duplicitous. If the Court declines to dismiss the indictment, Ms. Scott requests that the Government be ordered to provide a bill of particulars so that she may adequately prepare for trial. Finally, the defense seeks suppression of identification evidence on the grounds that the procedure was unduly suggestive or, at minimum, an evidentiary hearing to determine the admissibility of such evidence.

---

[1] Attorney Declaration is submitted as Exhibit A.
[2] The complaint is submitted as Exhibit B.
[3] The indictment is submitted as Exhibit C.

## ARGUMENT

**I.**      **The Indictment is Legally Deficient Because the Charges are Duplicitous**

Pursuant to Federal Rules of Criminal Procedure 12(b)(3)(B)(i) and 12(b)(3)(C), Ms. Scott moves to dismiss the indictment because each count is duplicitous. These defects are intertwined and render the indictment fundamentally flawed. While dismissal is warranted, another remedy is that the Government seek leave to re-present any timely, discrete acts to a grand jury in a manner that cures these defects.

### A.  Each Count Improperly Joins Multiple Offenses (Duplicity)

Both counts of the indictment are impermissibly duplicitous. Each purport to charge a single offense but, in fact, alleges multiple distinct acts involving different contractors over a three-year period (2020–2023). The Government may argue that the counts charge "continuing offenses," but that contention fails as a matter of law. Neither § 666 nor § 1951 criminalizes a continuing course of conduct. Instead, both statutes address discrete, completed transactions; each instance of bribery or extortion is an individual offense. Unlike conspiracy or mail fraud, there is no statutory language or judicial precedent suggesting that bribery and extortion under these statutes may be charged as continuing offenses.

The Second Circuit has made clear that "a duplicitous indictment is '[a]n indictment containing two or more offenses in a single count.'" *United States v. McCourty*, 562 F.3d 458, 462 n.2 (2d Cir. 2009) (quoting *Black's Law Dictionary* 788 (8th ed. 2004)). Rule 12(b)(3)(B)(i) recognizes duplicity as a defect in the indictment, and Rule 8(a) requires a "separate count for each offense." See *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980); *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992).

As the Second Circuit has emphasized, "If the doctrine of duplicity is to be more than an exercise in mere formalism, it must be invoked only when an indictment affects the policy considerations that underlie that doctrine." *See*, *United States v. Margiotta*, 646 F.2d 729, 732–33 (2d Cir. 1981) (quoting *Murray*, 618 F.2d at 897). Those policy considerations include preventing uncertainty as to whether a general verdict of guilty conceals a split verdict on different offenses, ensuring unanimity among jurors on each specific offense, providing adequate notice to the defendant, facilitating appropriate sentencing; and protecting against double jeopardy. *Margiotta*, 646 F.2d at 733.

Here, Count One alleges that Ms. Scott solicited bribes from multiple contractors in connection with various no-bid contracts over a three-year period. Count Two alleges extortion of those same contractors during the same time frame. These are not singular offenses, but a series of separate alleged transactions improperly grouped together in single counts.

Accordingly, both counts are duplicitous and should be dismissed.

### B.  The Duplicitous Counts are Prejudicial

The next inquiry is whether the duplicitous counts are prejudicial. See *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (quoting *Murray*, 618 F.2d at 896) ("An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be 'a separate count for each offense,' and 2) the defendant is prejudiced thereby.") The defense maintains that lumping multiple criminal acts involving different individuals, at different locations in different time frames into a single count (or in this case two separate counts essentially charging the same conduct) is manifestly unfair and prejudicial.[4] A general verdict of guilty could very easily

---

[4] Charging multiple bribes in one count has been criticized in other Circuits as requiring specificity to avoid vagueness and multiplicity concerns. See, e.g., *United States v. Schmeltz*, 667 F.3d 685 (6th Cir. 2011).

conceal a jury finding that the defendant was guilty of some crimes, but not others. Additionally, there would be a high risk that the jury would not find guilt unanimously as to one or more criminal acts. This approach creates a risk that a jury will conclude that Ms. Scott must have accepted at least one bribe and therefore find her guilty without ever unanimously deciding that she committed a specific act. The risk of non-unanimous verdicts is a core constitutional protection under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Richardson v. United States*, 526 U.S. 813 (1999).

Here, unlike in *Margiotta*, there is no single scheme to defraud, nor does this indictment involve a single payor of unlawful commissions. *See Margiotta,* 646 F.2d at 733. The government has never even alleged that there was a single scheme to defraud in Ms. Scott's case. On the contrary, as noted above, this case involves different individuals, times, places, and presumably bribes related to different contracts.

### C. The Charged Conduct does not Constitute a Single Continuing Offense

The only theory upon which both counts can stand is if they constitute a continuing offense. Courts in this circuit have upheld duplicitous counts where the acts within the counts constitute a single continuing scheme. *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006) ("…this court has long held that 'acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme.'") (*quoting United States v. Tutino*, 883 F.2d 1125, 1141(2d Cir. 1989), *cert. den.* 493 US. 1081 (1990)); *see also Aracri*, 968 F.2d at 1518; *Margiotta*, 646 F.2d at 733); *see also United States v. Robinson*, 294 Fed. App'x. 630 (2d Cir. 2008); *United States v. Gilmore*, No. 24-cr-127 (LJL), 2024 WL 3990604 (S.D.N.Y. Aug. 29, 2024). The charges in these cases

and the nature of the duplicity claims in them, however, are distinguishable from the allegations against Ms. Scott.

The cases referenced in *Olmeda* that have found a single continuing offense invariably involve allegations of a conspiracy or a scheme to defraud. *Olmeda* principally involved a double jeopardy claim because the defendant was charged with unlawful possession of ammunition in the Southern District of New York after having pled guilty to a similar charge in North Carolina charging him with possession of ammunition "within the Eastern District of North Carolina <u>and elsewhere</u>." *See Olmeda*, 461 F.3d 271 at 283 (emphasis added). In finding that there was a double jeopardy violation precluding a subsequent prosecution for the unlawful possession in New York, the court preliminarily found that "the law would not have precluded Olmeda's guilty plea to a single duplicitous count in one district covering both his June 2002 ammunition possessions*." Id. at 290.* Incidental to that holding was the court's observation that separate acts could be charged in a single a count if the acts are part of "a single continuing scheme," *citing Tutino*, *Aracri*, and *Margiott*a. *Id*. at 281. Thus, *Olmed*a relied upon cases that are analytically distinct from the case before the court and did so merely to support its finding that where the Government joins possessory offenses in multiple locations in a single count in a single district, a defendant's plea to that count precludes subsequent prosecution in another district on double jeopardy grounds.[5]

*Tutino* involved a challenge to a substantive count aggregating possession of heroin over a three-month period in an indictment which alleged a conspiracy to distribute more than one

---

[5] The defense points out that *United States v. Gilmore*, No. 24-cr-127 (LJL), 2024 WL 3990604 (S.D.N.Y. Aug. 29, 2024) involved a NYCHA superintendent who was one of those who was arrested in the same overarching investigation as Ms. Scott. For the reasons set forth in the ensuing analysis, the defense contends that Judge Liman incorrectly concluded that discrete acts of bribery constitute a continuing offense for duplicity purposes.

kilogram of heroin. *See*, *United States v. Tutino,* 883 F.2d 1125. The Circuit held that the District Court properly found that the defendants "were involved in an ongoing and continuous drug conspiracy and thus the two sales were part of a singular continuing scheme." *Id.* at 1141.

*Aracri* also involved a conspiracy. *See, United States* v. *Aracri*, 968 F.2d 1512. There it was a conspiracy to defraud the United States through a single scheme to avoid the payment of gasoline excise taxes through a system of fictitious invoices. The court rejected the contention that the conspiracy count was duplicitous because "[a] conspiracy indictment presents 'unique issues' in the duplicity analysis because 'a single agreement may encompass multiple illegal objects.'" *Id.* at 1518 (*quoting Murray*, 618 F.2d at 896).

In *Margiotta* the defendant, a public official, was charged with mail fraud and extortion affecting interstate commerce through a scheme that had an insurance broker corruptly pay commissions to the defendant and other individuals at the defendant's direction. *See, United States v. Margiotta*, 646 F.2d at 730-731.  The question revolved around whether charging numerous mailings in the mail fraud count was duplicitous. In overruling a District Court ruling that would have required the Government to elect a single mailing, the Circuit predicated its decision upon a finding that "the essence of his alleged crime is carrying out a single scheme to defraud," specifically noting that there would be no unfairness provided "all of the elements of mail fraud [are] established, including the mailing of at least one item in furtherance of the scheme to defraud." *Id*. at 733.

In *Robinson*, which is an unreported decision, the defendant was charged with a scheme and artifice to defraud a financial institution and interstate transportation of stolen goods involving counterfeit or altered checks that extended over several years and different recipients. 294 F. App'x at 632; Indictment, *United States v. Robinson*, (No.1:04-cr-01360 (LAP)), Dkt. 4.

An analysis of the underlying facts, however, reveals numerous factors that are plainly distinguishable from the current case. Robinson conspired in a "scheme [that] involved similar participants throughout its duration." Brief for United States, *United States v. Robinson*, 2008 WL 5785717 (Mar. 15, 2008) (No.07-cr-3680). The principal evidence against him was that of co-conspirators who conspired with him from the inception of the scheme and ultimately cooperated and testified against him. As the Government represented to the court, "…the fact that Robinson utilized the same method to obtain the checks (stealing from his employers), sent them to the same co-conspirator . . . using the same method of delivery . . . to defraud the same bank . . . strongly supports the conclusion that Robinson's conduct was part of unified scheme." *Id*.

Finally, as noted above, the defense contends that the court's analysis in *Gilmore* is flawed. First, without any controlling authority the court held that discrete acts of bribery constitute a continuing offense. *See Gilmore*, No. 24-cr-127 (LJL), 2024 WL 3990604 at*4*. The opinion references cases that are factually and analytically dissimilar to this case. Further, it relies upon *Robinson* which, as just discussed, specifically charged "a scheme and artifice to defraud" that was plainly supported by the facts recounted by the Government in its brief. *Id.* at *2.

There is no basis to apply the principles that emerge from the above cases to the facts in this case, which charge separate acts of bribery or extortion under color of right. While the defense is aware that while the Government simultaneously brought charges against approximately 70 other NYCHA employees when Ms. Scott was charged, and that it views the bribery as part of the "culture of corruption," they have neither charged a conspiracy nor a scheme to defraud. Ms. Scott is charged with distinct allegations, involving distinct individuals at

13

separate locations. She is not alleged to have acted with any co-defendants or conspirators. The fact that she is alleged to have committed the same crimes on numerous occasions does not establish a single continuing crime. Given the prejudice discussed above, to permit all these distinct criminal acts to be charged in a single count (or, as noted, two counts charging the same conduct as violating two separate statutes) is to render the statutory prohibition against duplicity non-existent.

The two counts in the instant matter are duplicitous and categorically prejudicial. The duplicity in this matter impedes the preparation of a proper defense, thus violating due process under *Brady v. Maryland*, 373 U.S. 83 (1963) and *United States v. Agurs,* 427 U.S. 97 (1976). Furthermore, Ms. Scott is prejudiced due to being deprived of his constitutional right to a unanimous jury verdict. Jurors could convict without agreeing on which specific bribe or extortion occurred, violating the Sixth Amendment and due process principles under *Apprendi* and *Richardson*.

### 3. Remedy for Duplicity

As for the appropriate remedy, dismissal of the counts is justified and has been held to be an appropriate remedy. *See United States v. Kearn*ey, 444 F. Supp. 1290 (S.D.N.Y 1978). The defense notes, however, that courts have recognized that there are less severe remedies. To the extent that the Court finds that the counts are duplicitous, the counts should be dismissed without prejudice so that the government can bring forth appropriately drafted charges.

### II.    Motion to Compel Production of a Bill of Particulars

### BACKGROUND FACTS

On February 21, 2025, the defense formally requested a bill of particulars concerning the Government's allegations related to Ms. Scott's alleged bribery scheme. The Government

responded on March 20, 2025, with only limited additional detail. The defense now respectfully moves this Court to compel the Government to provide a full and sufficient bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. The defense specifically seeks the following information, all of which is necessary to ensure Ms. Scott's ability to adequately prepare for trial, avoid unfair surprise, and prevent exposure to double jeopardy:

1. The identity of the vendors or companies alleged to have made or been solicited for payments;
2. The approximate date of each alleged bribe;
3. The location of each alleged bribe;
4. The approximate amount of each bribe;
5. The method by which each bribe was paid;
6. The approximate date each bribe was solicited;
7. The location where each bribe was allegedly solicited;
8. The approximate amount of each solicited bribe;
9. The number of vendors allegedly involved;
10. The names of the principals of each vendor or company allegedly involved;
11. Identification of any contracts allegedly awarded in connection with a bribe or solicitation;
12. Specification of whether those contracts were blanket contracts or micro-purchase orders.

### A. A Bill of Particulars is Necessary to Enable Ms. Scott to Adequately Prepare a Defense, Avoid Surprise at Trial, and, if Acquitted of the Charges, to Prevent Double Jeopardy.

Rule 7(f) permits a defendant to move for a bill of particulars to "identify with sufficient particularity the nature of the charge pending," enabling the preparation of a defense, avoiding surprise, and preventing double jeopardy. *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam). District courts possess broad discretion to determine whether a bill is warranted. *United States v. Santiago*, 174 F. Supp. 2d 16, 34 (S.D.N.Y. 2001); *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984). The Court must assess the "totality of the information available to the defendant" including the indictment and discovery materials, and determine whether further detail is necessary. *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000), aff'd, *In re Terrorist Bombings*, 552 F.3d 93 (2d Cir. 2008).

This case involves a wide-ranging bribery and solicitation accusation spanning approximately three years, implicating at least multiple contractor witnesses and over 100 collectively alleged acts. The Government's disclosure to date fails to meaningfully narrow the scope of its allegations or identify the alleged actors, payments, or relevant transactions. The discovery includes dense, voluminous records—such as spreadsheets referencing countless contractor interactions with NYCHA vendors over a decade—but lacks the specificity needed to evaluate any of the alleged illegal acts.

Like in *Bortnovsky*, where the Second Circuit reversed due to the Government's failure to identify specific burglaries or falsified documents, the defense here faces trial without knowing the dates, actors, or mechanisms of the alleged crimes. 820 F.2d at 574–75. The result is a clear risk of unfair surprise and a shifting of the burden to the defendant to disprove vague accusations.

Courts in this Circuit routinely compel the Government to provide particulars in complex bribery and fraud cases involving document-based evidence. For example. In *United States v. Siddiqi*, No. 06 Cr. 377 (SWK), 2007 WL 549420, at *2 (S.D.N.Y. Feb. 21, 2007): Court ordered disclosure of the date, amount, and identity of bribe-givers to allow the defendant to prepare an alibi and rebuttal; *United States v. Lino*, No. 00 Cr. 632 (WHP), 2001 WL 8356 (S.D.N.Y. Jan. 2, 2001): Court ordered disclosure of the persons involved, amounts of bribes, and related funds; *United States v. McGuinness*, 764 F. Supp. 888, 893–94 (S.D.N.Y. 1991): Court required identification of dates, amounts, and actors in unlawful payment charges. These cases confirm that when a defendant is charged with receiving bribes from numerous individuals over an extended period—especially when records are voluminous and generalized—a bill of particulars is not only appropriate, but necessary.

The Government has not disclosed the names of the vendors or individuals alleged to have paid or been solicited for bribes. Without these identities, the defense cannot investigate possible motives, biases, or prior misconduct of witnesses, determine whether any payments were lawful or business-related, prepare an alibi or demonstrate the implausibility of the Government's timeline, reconcile dense discovery with the allegations.

Courts have emphasized that the "test is necessity, not usefulness"—and the defense plainly meets that standard here. *United States v. Murgio*, 209 F. Supp. 3d 698, 719–20 (S.D.N.Y. 2016) (ordering Government to provide dates, locations, and amounts of alleged bribes).

Under the test set forth in *United States v. Turkish*, 458 F. Supp. 874, 881 (S.D.N.Y. 1978), and reaffirmed in *United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975), disclosure of witness identities is warranted where:

1. The offense does not involve violence;

2. Ms. Scott has no violent criminal history;

3. The case involves largely documentary evidence;

4. There is no realistic risk of witness intimidation;

5. The alleged conduct spans several years, making trial preparation complex;

6. The defendant has limited resources to conduct independent investigation.

All six factors strongly support pretrial disclosure in Ms. Scott's case. The Government's vague concern for potential witness intimidation cannot override the defense's constitutional right to prepare an adequate defense. The information sought by the defense is not aimed at obtaining the Government's trial strategy or witness lists as a matter of right, but rather at securing the basic facts necessary to defend against serious allegations. The current discovery,

when measured against the length, breadth, and complexity of the alleged conduct, is woefully insufficient.

For the foregoing reasons, the defense respectfully requests that the Court grant the motion to compel a bill of particulars and direct the Government to provide the requested information without further delay.

### III. Motion to  Suppress all Out-of-Court Identifications or, Alternatively, Conduct a Pretrial Hearing to Make Essential Findings of Fact

Ms. Scott respectfully moves this Court to suppress all out-of-court identifications as the product of unduly suggestive procedures in violation of due process. Alternatively, the Court should hold a Wade hearing to evaluate the admissibility of this evidence

According to the Complaint, on July 26, 2023, CW-2 identified Ms. Scott in a photo array or "photobook" procedure. On November 29, 2023, CW-24 identified Ms. Scott in a photo array or "photobook" procedure. It is unclear if any of the other contractor witnesses mentioned in the government's March 20, 2025 letter (Exhibit G) similarly identified or failed to identify Ms. Scott in a similar procedure. Based on the information disclosed to the defense, these identification procedures were unduly suggestive.

### A.   The Pretrial Identification of Ms. Scott Should be Suppressed Because the Photobook Procedure was Unduly Suggestive.

Due Process requires that identification testimony that is the product of unnecessarily suggestive law enforcement procedures, must be suppressed. *See Manson v. Brathwaite*, 42 U.S. 98, 114 (1997). "When the defendant objects to identification testimony to be given by a witness who has identified him prior to trial, a sequential inquiry is required in order to determine whether either the prior identification or an in-court identification of the defendant at trial is

admissible. The Court must first determine whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator. *"Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001); *United States v. Perez*, 248 F. Supp. 2d 111, 113 (D. Conn. 2003), *See also United States v. Tortora,* 30 F.3d 334, 338 (2d Cir.1994).

 Ms. Scott objects to the identification testimony that will be offered by at least three witnesses who identified her in the photo array/photobook procedures held in 2023. The Second Circuit in *Raheem v. Kelly* has established that where such an objection is made by the defendant, an inquiry is required. *See Raheem v. Kelly,* 257 F.3d 122. Ms. Scott is requesting the opportunity to execute such an inquiry via an identification suppression hearing in order to determine the admissibility of the pretrial photo array/photobook identification. "The ultimate question of the constitutionality of pretrial identification procedures is a mixed question of fact and law… *Sumner v. Mata,* 455 U.S. at 597, 102 S.Ct. at 1306," *Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir. 1986). To make a finding of fact and law as to the constitutionality of the pretrial identification procedure of Ms. Scott, we would ask that this Court grant an evidentiary hearing. *See*, *United States v. Wade*, 388 U.S. 218 (1967).

 On the sparce record disclosed to the defense about how these identification procedures were conducted, it is clear that they were held under inherently coercive conditions since at least two of the known identifying witnesses were facing the threat of prosecution under circumstances in which they had been offered immunity presumably in exchange for information. Beyond that, the defense has little to no indication about what if any measures were taken to avoid impermissible taint, whether and to what extent the witnesses described the person they claimed took bribes, whose real name one witness did not even recall, but subsequently identified as Ms. Scott, and what questions were asked of the witnesses prior to the

identification. Accordingly, this Court should at least conduct a pre-trial evidentiary hearing outside the presence of the jury to evaluate the procedures and avoid compounding any taint with the "widely condemned" identification of Ms. Scott at trial. *Stoval v. Denno*, 388 U.S. 293, 302 (1967).

### B.  The Proffered Evidence Resulted from an Unduly Suggestive Identification Procedures and Is Unreliable

The Court should suppress the identification evidence as the unreliable product of unduly suggestive identification procedures or, in the alternative, hold a pretrial hearing to determine the admissibility of the identifications made by these three witnesses. "[W]hen the prosecution offers testimony from an eyewitness to identify the defendant as a perpetrator of the offense, fundamental fairness requires that that identification testimony be reliable." *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). "In reviewing a due process challenge to the admission of such testimony, [Courts] must look at the facts of each case and the totality of the surrounding circumstances. The ultimate questions are whether the pretrial proceedings have been conducted in a manner that was unnecessarily suggestive and whether, in all the circumstances, there is a very substantial likelihood of irreparable misidentification." *U.S. v. Maldonado–Rivera*, 922 F.2d 934, 973 (2d Cir. 1990) (internal quotation marks and citations omitted).

When a defendant objects to identification testimony, the Court must first assess whether the identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator. *Raheem*, 257 F.3d at 133. If found to be suggestive, then the Court must determine whether the identification was nonetheless independently reliable. *Id*.

"A request for a *Wade* hearing is generally granted where any question is raised concerning the suggestibility of the identification procedure." *United States v. Chandler*, 164 F.

Supp. 3d 368, 383 (E.D.N.Y. 2016) (quotations omitted) (collecting cases). The defense

acknowledges, however, that "[w]hile this Circuit has a preference for holding a Wade hearing

upon a defendant's request, see *United States v. Archibald*, 734 F.2d 938, 941 (2d Cir. 1984), a

defendant is not automatically entitled to a Wade hearing." *United Staes v Ikli*, 2017 WL 396681,

at *3 (.S.D.N.Y. Jan. 26 2017). "The prudence of such a hearing has been emphasized by many

decisions in the Courts of Appeals, most of which have in various ways admonished trial courts

to use that procedure." *Watkins v. Sowders*, 449 U.S. 341, 345 (1981). Because the "procedures"

and interactions that the Government had with the witnesses before, during and after the

"procedures" are unknown at this time - this Court should suppress the identification evidence,

or in the alternative, conduct a pre-trial hearing to determine the admissibility of these

identifications before they are offered or mentioned at trial particularly in order to avoid both

mid-trial delay as well as undue prejudice by exposing the witnesses to the defendant under the

inherent suggestivity of a courtroom.

### C.  The Court Should Find the Identification Procedures Were Unduly and Unnecessarily Suggestive, or in the Alternative, Grant an Evidentiary Hearing Regarding the Procedures Employed by Law Enforcement in Conducting the Photo Array.

At least two of the three witnesses who purportedly identified Ms. Scott's picture were

under investigation at the time of their identification of Ms. Scott. Thus, the identification

procedures were conducted under tense circumstances under which even the most subtle

suggestive implication through word or gesture by the investigators could taint the reliability of

the identification.

The focus of the inquiry into suggestiveness is whether the photo in the array matches

what the witness had initially said in their description. The Second Circuit has found that a

photographic array was impermissibly suggestive when a witness described a bank robber as a black man with light skin and then only one of the photographs in the array showed a black man with light skin tone. *United States v. Fernandez*, 456 F.2d 638 (2d Cir.1972). The Second Circuit has also ruled that a lineup procedure is unduly suggestive where the defendant is wearing the same color shirt the witness had initially described. *United States ex rel. Cannon v. Montanye*, 486 F.2d 263 (2d Cir.1973), cert. denied, 416 U.S. 962 (1974). "One would think that if a suspect is described only in terms of one characteristic, the filler photos in an array would also portray people having that characteristic." *United States v. Eltayib*, 88 F.3d 157, 166 (2d Cir. 1996).

"The fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents. If there is nothing inherently prejudicial about the presentation, such as use of a very small number of photographs or of suggestive comments, the "principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to 'suggest to an identifying witness that [that person] was more likely to be the culprit.' " *Jarrett v. Headley,* 802 F.2d at 41 (quoting *United States v. Archibald,* 734 F.2d 938, 940 (2d Cir.1984))." *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990)

In addition to assessing such factors as the size of the photographic array, the Court must also consider the manner of presentation by the officers, including possibly suggestive comments. *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990). "A photographic array used to identify a criminal suspect is suggestive if "the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to

suggest to an identifying witness that that person was more likely to be the culprit." *United States v. McGee*, No. 99-CR-150E, 2000 WL 1520957, at *2 (W.D.N.Y. Oct. 10, 2000).

In this case the Government has produced little information concerning the manner the photo array was conducted or presented by the officers. The defense has not been provided any information regarding what the Government and these cooperating witnesses had discussed, reviewed, or looked at prior to the identification procedure, leaving the Court unable to assess the "manner of presentation by the officers." See *Conception*, *supra*. Prior to the identification procedure, there is no indication as to what if any description the witnesses had provided of the individual to whom they paid bribes. Such a description would be vital to assess whether Ms. Scott's photo stood out, whether fillers were used and whether those fillers were appropriate.[6]

When assessing reliability, the Court has to consider a variety of factors, including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *United States v. Thai*, 29 F.3d 785, 808 (2nd Cir. 1994) (quoting *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)). The Second Circuit in *Thai* instructs that these factors must also be evaluated in light of the totality of the circumstances.

It is essential to know what conversations the Government had with these witnesses regarding Ms. Scott's prior to the identification. While the Government does reference in the

---

[6] A partial *Wade* hearing was conducted on May 29, 2025, in a related NYCHA case, *United States v. Cartagena*, 24 Cr. 516 (PGG). Although the Court did not ultimately issue a ruling, the testimony presented by government witnesses concerning the NYCHA identification procedures raised significant concerns. Specifically, the testimony suggested that there may be material discrepancies between the procedures described in agent affidavits and the manner in which those identification procedures were actually conducted. These inconsistencies call into question the reliability of the identification process and warrant further scrutiny in this case as well. Minutes from that hearing are attached as Exhibit F.

Complaint that there were contacts in CW-2's phone that had a number the Government believes belonged to Ms. Scott, it has not shared at what point those phone numbers were provided to the Government by the witnesses or discussed. A timeline as to what the witnesses said as to any identifying information concerning Ms. Scott is essential. This is particularly true of those witnesses who did not know or could not recall Ms. Scott's name. It would also be important to know when the immunity and witness proffer agreements took place, what was and is expected of the witnesses, and what the consequences would be if the witnesses gave a name that the Government knew was wrong (i.e. pointed to a filler photo or a different coworkers photo), as this goes directly to the suggestive nature of the identification process. What is clear is that there was external pressure on these witnesses to make an identification.

In its March 20, 2025, disclosure letter, the Government listed one bullet point as to what was said to the witnesses prior to viewing the photo book:

"• that (i) for each photo, the witness should look at the photo carefully and indicate whether he or she recognizes the person in the photo, including any explanation as to the witness's degree of certainty; (ii) some of the photos may be old; (iii) there is no expectation that the witness will recognize anyone or that any particular individual is included in the photobook; and (iv) the only answer that investigators are looking for is the truth." (Exhibit E).

Even if the language of the bullet points were read word for word, it would lead to confusion as to whether the degree of certainty requested would relate to how certain the witnesses are in recognizing the person in the photo, how certain the witnesses are that they ever worked with the person in the photo, or how certain they are that the witnesses ever bribed that person. Importantly, no description of the witness' certainty has been provided to the defense for this Court to effectively scrutinize.

Without knowing what was said by the witnesses prior to being shown the photo book, the procedure may have been inherently suggestive if these specific witnesses had worked with Ms. Scott in the past. Whether or not these witnesses ever paid bribes to Ms. Scott, they may be "just a witness with the wit to suppose that the one suspect with the salient characteristic must be the person suspected by the authorities." *United States v. Eltayib*, 88 F.3d 157, 166 (2d Cir. 1996). Here, it is possible that the complaining witnesses worked with Ms. Scott at some point. Therefore, the coercive atmosphere plus the fact that they may have recognized Ms. Scott from work, may easily led the witnesses to choose a photo of someone they had worked with, to satisfy the Government. If the witnesses chose someone else with whom they never worked, then they would quickly be found to be lying. Under such circumstances, the fact that Ms. Scott's face was in the photo book compiled by law enforcement risks instilling implicit bias in the minds of the witnesses that she must have done something wrong.

At times, investigators "want[] to confirm that the interviewees actually kn[o]w people related to the investigation and [are] providing truthful answers before exposing part of the investigation through the presentation of the photo book." *United States v. Rodriguez*, No. 12-CR-45S, 2013 WL 6057862, at *1 (W.D.N.Y. Nov. 13, 2013). Thus, it is reasonable to assume there was considerable conversation prior to ever showing the witnesses the photo book containing Ms. Scotts' picture.

The record is devoid of any information about the context leading up to the identification or when there was discussion about contacts in the vendor's phones. The Government says that CW-2 has a contact in his phone with the name "Carolyn Scoott Super 2" but identified Ms. Scott as "Carolyn Scott." The Government further says that CW-24 identified Ms. Scott as "the superintendent at Dykman Houses." Accordingly, it is crucial to this Court's evaluation of the

fairness of the proceeding to know at what point the phone contact or the name of Ms. Scott was viewed or discussed ahead of the identification. At present the record is devoid of any information concerning the nature, content, and discussions among the identifying witnesses and the investigators, including whether any description of individuals who solicited bribes was provided prior to the identification procedure.

Where a Court determines that the record is insufficient for it to properly assess the suggestivity prong due to insufficient information about the identification procedure, Courts have found it "advisable" to have an evidentiary hearing. *See United States v. Chandler*, 164 F. Supp. 3d 368, 384 (E.D.N.Y. 2016) (denying the motion to suppress the identification without prejudice but granting finding that granting an evidentiary hearing with leave to renew following the evidentiary hearing was "advisable"); *See also United States v. Wilson*, 493 F. Supp. 2d 364, 383 (E.D.N.Y. 2006) ("While [defendant's] claims of suggestivity are speculative at this point, [defendant] has raised a concern, and the most cautious route would be to address this issue at the Wade hearing to establish that the photo array procedures were not unduly suggestive.") In Chandler, the court reasoned that "given that the poor quality of the copy of the photo array provided to the Court and the lack of any sworn affidavits or testimony from the Government regarding the procedures employed by the NYPD in conducting the photo array, the Court, in its discretion, finds that a Wade hearing is advisable." Likewise, in *Walia*, the court found in the absence of sufficient detail to evaluate whether the identification procedure was unduly suggestive, a pre-trial identification hearing to determine suggestivity was appropriate. *United States v. Walia*, No. 14-CR-213 MKB, 2014 WL 2533848, at *3 (E.D.N.Y. June 5, 2014). The court reasoned, "While the government may be correct that neither the arrays nor the manner in

which they were conducted was unduly suggestive, the court has no sworn testimony from which it can conclude that the manner in which the arrays were conducted was not unduly suggestive."

Thus, in our instant case, should this Court determine that the record is insufficient, then a pre-trial evidentiary hearing is appropriate to assess whether the identification procedure was unduly suggestive before even moving to the reliability prong.

### D. The witnesses' identifications are not independently reliable

Should this Court determine it has enough information to rule on the suggestivity prong, the Court cannot find that the witnesses' identifications were independently reliable when there was no indication by the Government as to the "witnesses' degree of certainty" in identifying the photo of Ms. Scott. In evaluating independent reliability, courts look to "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).

As the Second Circuit has observed "[a] growing body of scientific research, moreover, has clarified and expanded what factors a court should examine in determining whether to exclude eyewitness identification testimony." *United States v. Nolan*, 956 F.3d 71, 80 (2d Cir. 2020). For example, studies suggest that the type of photobook "mugshot" viewings can taint a person's memory. *Young v. Conway*, 698 F.3d 69, 82 (2d Cir. 2012) (discussing the "mugshot exposure effect" where a witness chooses a person based on a sense of familiarity derived from a previous exposure) (citing Ryan D. Godfrey & Steven E. Clark, *Repeated Eyewitness Identification Procedures: Memory, Decision Making, and Probative Value*, 34 Law & Hum. Behav. 241, 242 (2010). Also, high levels of stress can cause a diminished ability for witnesses

to accurately recall events, leading to inaccurate identifications. *Id*. at 81. In our case, the witnesses, each of which was suspected of engaging in criminal behavior, were under enormous pressure from law enforcement as they were under federal criminal investigation. It is unclear how long they had been interviewed by law enforcement; whether they had legal counsel with them and whether they were advised of the consequences of not telling the truth. An evidentiary hearing would allow the Court to evaluate how the witnesses' memories and recall may have been impermissibly tainted thus leading the identification to be independently unreliable.

In turning to the *Biggers* factors, the Government has provided no discovery as to the opportunity for contractors to view Ms. Scott during the purported crime, the circumstances under which bribes were allegedly paid, or how often the witnesses personally interacted with her. Additionally, the Government has not provided any information that would enable an assessment of the witnesses' prior description, if any, from which to compare an original description to the identified photo.

With regard to level of certainty, the limited facts available suggest that there was considerable uncertainty. Additionally, the final *Biggers* factor assesses the length of time between the crime and the confrontation. Here, the length between alleged crime and the identification procedure was a few years. Assuming all the identifications took place in 2023, then the length of time between the alleged crime and the identification was approximately three years for CW-24, with no indication that the witnesses had any interaction of any quality after the alleged bribes. *See, Raheem v. Kelly*, 257 F.3d 122, 139 (2d Cir. 2001) (holding less than three weeks between crime and lineup was "not great"). Should the Court determine there is insufficient information to determine whether the contractors' identifications were independently reliable, the Court should suppress, or in the alternative, conduct an evidentiary hearing so that it

28

can analyze the facts. This Court has broad discretion to grant an evidentiary hearing, "even where the defendant's allegations are general and conclusory," and particularly where, as here, the defense lacks the knowledge of the essential facts. *United States v. Shamsideen*, No. 03 CR.1313(SCR), 2004 WL 1179305, at *9 (S.D.N.Y. Mar. 31, 2004).

The Government has failed to meet its burden of demonstrating that the pretrial identification procedures used here were free from undue suggestion. The record is sparse, the procedures opaque, and the risk of misidentification significant. Suppression is warranted, or at a minimum, an evidentiary hearing is necessary to safeguard Ms. Scott's constitutional rights.

## IV. CONCULSION

For the foregoing reasons, Carolyn Scott respectfully requests this Court to enter an Order granting the relief sought herein. Specifically, for all of the foregoing reasons, this Court should dismiss the indictment on the grounds of duplicity or alternatively, direct the Government to disclose additional information consistent with the request for a bill particulars; and suppress the identification evidence or alternatively, conduct a pre-trial hearing to evaluate the constitutionality of the out-of-court identification procedures; and issue an order directing notice of any prior bad acts evidence pursuant to F.R.E. 404(b) at least 30 days in advance of trial, and, for additional or alternative relief this Court deems just and fair.

Dated:    New York, New York
          July 28, 2025

Respectfully submitted,

Esere J. Onaodowan, Esq.
Christine E. Delince, Esq.
The Law Offices of Onaodowan & Delince, PLLC
Counsels for Carolyn Scott