UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA,                :

   -against-                                      :          ATTORNEY DECLARATION

                                                                           24 Cr. 204 (GBD)

CAROLYN SCOTT,                            :
                Defendant,            :
--------------------------------------------------------x

I, ESERE J. ONAODOWAN, ESQ under penalty of perjury affirms as follows:

1. I am the attorney for Carolyn Scott, a defendant herein and have been appointed pursuant to the Criminal Justice Act. As such, I am familiar with the facts and circumstances hereof.

2. I make this Declaration in support of defendant Carolyn Scott's motion for an Order granting various forms of relief.

3. This Declaration is made on information and belief which is based on a review of the Complaint, discovery material provided by the Government pursuant to Rule 16 of the Federal Rules of Criminal Procedure and conversations with the Assistant United States Attorneys assigned to this matter.

4. Carolyn Scott's arrest was part of a law enforcement operation in which 70 New York City Housing Authority ("NYCHA") employees were similarly but separately charged. The nature of the charges is that while employed at NYCHA, Ms. Scott was received monetary bribes from vendors so that the vendors would be awarded "no-bid" contracts at the NYCHA housing projects at where Ms. Scott worked as a superintendent or assistant superintendent.

5. Specifically, the Complaint[1] alleges that "from at least in or about May 2022 through at least in or about March 2023" a vendor who is identified as "CW-2" was awarded "at least approximately" five no-bid contracts at the NYCHA Rangel Houses at which Ms. Scott served as a superintendent. It is alleged that during that time, CW-2 paid Ms. Scott for at least approximately two of the no-bid contracts CW-2 received from Ms. Scott. The Complaint alleges that Ms. Scott was paid "approximately $1,000 in cash for [the first] no-bid contract that was worth approximately $7,500." It is further alleged that Ms. Scott was paid "approximately $1,500 in cash for [the second] no-bid contract that was worth approximately $10,000".

---

[1] Exhibit B - Complaint

6. Additionally, the Complaint alleges that from "at least in or about January 2020 through in or about April 2020" a vendor who is identified as "CW-24" was awarded "at least approximately" six no-bid contracts at the NYCHA Dykman Houses at which Ms. Scott served as an assistant superintendent. During that time, the Complaint alleges that CW-24 paid Ms. Scott for at least five of the six no-bid contracts CW-24 received from Ms. Scott at Dyckman Houses. It is further alleged that each of the no-bid contracts that CW-24 received from Ms. Scott was worth approximately $5,000 and Ms. Scott was allegedly paid approximately $500 for each bribe.

7. Thereafter, on April 4, 2024, a two-count indictment was filed charging Ms. Scott with one count of Solicitation and Receipt of a Bribe by Agent or Organization Receiving Federal Funds (18 U.S.C. § 666(a)(1)(B) and one count of Extortion Under Color of Official Right (18 U.S.C. § 1951).[2]

8. In pertinent part for the purposes of this motion the indictment in Count One charges that from at least in or about January 2020 to at least in or about March 2023, Carolyn Scott as an agent of NYCHA, which received more than $10,000 in federal assistance, solicited and accepted bribes of at least $7,500 in exchange for "arranging for certain contractors to receive no-bid contracts from NYCHA worth a total of at least approximately $80,000." No additional information as to the dates and places at which the conduct took place is specified in Count One.

9. Count Two, which alleges Extortion under Color of Official Right, insofar as is pertinent to this motion alleges that "from at least in or about January 2020 through at least in or about March 2023 Carolyn Scott under color of official right obtained money from NYCHA contractors, with their consent, that was not Carolyn Scott or her office."[3] No additional information as to the dates and places at which the conduct took place is specified in Count Two.

10. Based upon public testimony adduced in recent trials of other NYCHA employees who were also charged with Bribery and Extortion, NYCHA superintendents and assistant superintendents have the authority to authorize no-bid contracts, as well as the authority to sign-off on the completion of vendor work done pursuant to on-going contracts awarded through the bid process.

11. Carolyn Scott has been employed by NYCHA since _____ and has served as an assistant superintendent or a superintendent from _____ through and including _____. During that period, she served in those capacities at approximately ___ different NYCHA properties and awarded or approved payment for countless vendor jobs.

---

[2] Exhibit C - Indictment
[3] Id. ¶ 2

12. On June 7, 2024, the Government began to provide discovery pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure. The disclosure included both "Global Productions," which were provided to other similarly charged NYCHA employees, as well as individualized discovery related to the Ms. Scott.

13. The Government's June 7, 2024 letter *inter alia* acknowledged its obligation under *Brady*, *Giglio*, and their progeny, and asserted that it would provide such material "in a timely manner prior to trial."

14. The June letter also included an initial description of an identification procedure involving the use of a "photo book" when interviewing witnesses that led to the identification of Ms. Scott. The disclosures related to the identification procedures will be discussed more comprehensively below in the section of this Declaration that sets forth the grounds for the motion seeking to suppress the identification.[4]

15. On February 21, 2025, following the defense viewing of the photobook, the defense made the following request with respect to the out-of-court identification procedures used[5]:
- All of the photographs viewed by the witnesses;
- The number of witnesses that identified Ms. Scott;
- The identity of the person who conducted the identification procedure;
- The exact questions asked, or comments made prior to the identification;
- The identity of the person asking said questions;
- The date, time and location of where the identification procedure took place;
- The number of people present during the identification procedure and their roles/titles;
- The amount of time it took each witness to identify Ms. Scott;
- Any documents signed by the witnesses(s) whether prior to, during or after the identification procedure;
- Any verbal or written responses made by the witnesses;
- Any video or audio recording of the identification procedure;
- Any documents law enforcement read to the witnesses during the identification procedure;
- Any notes taken by the government or law enforcement officials before, during or after the identification procedure;
- The race/ethnicity of the witnesses.

16. On March 20, 2025, the government responded to the defense's request as follows:[6]

> - The Government does not agree that you are entitled to the information you have requested Requests 2-8 and Request 14, whether pursuant to Rule 16, a bill or particulars, or otherwise. Nevertheless, we hereby provide you with the

---

[4] The June 7, 2024 Goernment letter is included as part of Exhibit D.
[5] The February 21, 2025 Defense letter is included as ExhibitE.
[6] The March 20, 2025 Government letter is included as Exhibit G.

below information, which is subject to change as the Government's investigation and trial preparations continue. This information should not be construed as a formal bill of particulars, and by providing the following information as a courtesy, the Government does not intend to limit its evidence, arguments, or legal theories.

- o The Government is presently aware of three witnesses who each identified the photograph of the defendant as a NYCHA employee who solicited or accepted bribe payments from that witness.

- o At least one member of this Office's prosecution team and at least one law enforcement agent from the law enforcement agencies specified in the Complaint administered the identification procedure to the witnesses, who each met with the Government separately. As set forth in the Government's discovery letter, dated June 7, 2024, each witness was instructed, in substance, that (i) for each photo, the witness should look at the photo carefully and indicate whether he or she recognizes the person in the photo, including any explanation as to the witness's degree of certainty; (ii) some of the photos may be old; (iii) there is no expectation that the witness will recognize anyone or that any particular individual is included in the photobook; and (iv) the only answer that investigators are looking for is the truth.[7]

- In response to Requests 9-13, the Government will provide witness materials sufficiently in advance of trial, in accord with its usual practice in this District regarding the production of such materials, which are expected to include witness statements and law enforcement reports of interviews with witnesses who identified the defendant.

17. Without knowing the identity of the witnesses who said they recognized Ms. Scott and that she neither sought nor did they pay her any bribes, it is impossible for the Defense to know what to look for. Additionally, this information is not responsive to the request that plainly seeks the current contact information for these witnesses.

### Facts Concerning Photo Array Identification of Defendant

18. As disclosed in the Complaint and in their initial disclosure letter of June 7, 2024, and amplified in a subsequent letter dated March 20, 2025, the Government employed an

---

[7] A partial *Wade* hearing was conducted on May 29, 2025, in a related NYCHA case, *United States v. Cartagena*, 24 Cr. 516 (PGG). Although the Court did not ultimately issue a ruling, the testimony presented by government witnesses concerning the NYCHA identification procedures raised significant concerns. Specifically, the testimony suggested that there may be material discrepancies between the procedures described in agent affidavits and the manner in which those identification procedures were actually conducted. These inconsistencies call into question the reliability of the identification process and warrant further scrutiny in this case as well. Minutes from that hearing are attached as Exhibit F

out-of-court identification procedure at which at least three witnesses identified Ms. Scott.

19. Of the known witnesses described as cooperating witnesses ("CW"), at least two were given immunity to provide information.

20. As far as the nature of the procedure, the Government used photo books, which included dozens of photographs of NYCHA employees and possibly filler photographs. The sole description of the procedure provided to the defense is as follows: Before being shown the photo book, each witness was instructed, in sum and substance and subject to natural minor variation, as follows:

    • that (i) for each photo, the witness should look at the photo carefully and indicate whether he or she recognizes the person in the photo, including any explanation as to the witness's degree of certainty; (ii) some of the photos may be old; (iii) there is no expectation that the witness will recognize anyone or that any particular individual is included in the photobook; and (iv) the only answer that investigators are looking for is the truth.

21. Aside from what is noted above in ¶ 20, the Government has not disclosed any information as to what was discussed with the witnesses ahead of the identification procedure, who was present before or during the procedure, what statements were made, if any, concerning the payment of bribes, nor whether the witnesses provided any description prior to the identification procedures of the individuals to whom they allegedly paid bribes, nor where or when any such bribes were paid or any "appropriate explanation of the witness's certainty," if any.

22. How many of the photos were actual NYCHA employees and how many "fillers" at any given procedure has not been disclosed.

### Specific Identifications

23. On or about July 26, 2023, CW-2 was shown the photo book. The number of individuals in the photobook at that time is unknown. During the meeting, CW-2 identified a photograph of Ms. Scott as "Carolyn Scott." The Government has not provided any information about whether CW-2 provided a description of what the person he remembered bribing looked like. The Government has not provided any information about what conversations were had before or during the CW-2's identification procedure. At an unknown time, the Government reached an agreement to extend immunity to CW-2.

24. On or about November 29, 2023, CW-24 reviewed a photo book. The number of individuals in the photobook at that time is unknown. During the meeting, CW-24 identified a photograph of Ms. Scott as "the Superintendent at Dykman Houses[.]" The Government has not provided any information about whether CW-24 provided a description of what the person he remembered bribing looked like or the Government

has not provided any information about what conversations were had before or during CW-24's identification. At an unknown time, CW-24 entered an immunity agreement with the government.

### Context in Which Identifications were Made

25. The Defense is not privy to the times, dates, locations or circumstances under which the out-of-court identification procedures were conducted. What is abundantly clear from public statements and disclosures by the Government is that the identifying witnesses include contractors who have been identified as cooperating witnesses. Additionally, the Defense knows from a letter dated February 5, 2024, from then United States Attorney Damian Williams to Hon. Sarah Netburn, Chief United States Magistrate Judge, that Ms. Scott's arrest was part of a massive operation that resulted in the very public arrest of seventy current and former NYCHA employees which alleged "a culture of corruption at NYCHA." That same letter makes clear that the charges were predicated upon allegations made by contractors who themselves admitted to paying bribes to the authorities and therefore were subject to prosecution.

26. The Defense has scant information concerning the details of the out-of-court identification, including what information and/or descriptions were provided by the witnesses prior to being shown the photo books. There is no information regarding what was said to them by law enforcement prior to the display of the books nor any other potentially suggestive disfavored practices or factors such as issues of cross-racial identification. It is clear that these identifications were made under circumstances that were inherently coercive and raise serious questions about whether the identification procedure was unduly suggestive so as to violate Ms. Scott's Due Process rights.

27. Accordingly, the Defense seeks to suppress the out-of-court identification procedures, or alternatively, requests that the Court conduct a hearing pursuant to the Fifth Amendment to the US Constitution, Fed. R. Crim. P. 12(b)(3)(C) and United States v. Wade, 388 U.S. 218 (1967) and its progeny to assess whether the procedures were unduly suggestive and whether they taint the reliability of any subsequent in-court identification of Ms. Scott.

Dated: New York, New York
July 28, 2025

                                                Respectfully submitted,

                                                _____
                                                The Law Offices of Onaodowan & Delince, PLLC
                                                Esere J. Onaodowan, Esq.
                                                Christine Delince, Esq.
                                                Counsels for Carolyn Scott