UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ x
UNITED STATES OF AMERICA,                :
                                         :
          -against-                      :
                                         :                    ORDER
                                         :
CAROLYN SCOTT                            :               24 Cr. 204 (GBD)
                                         :
                    Defendant.           :
------------------------------------ x

GEORGE B. DANIELS, United States District Judge:

Before this Court are Defendant Carolyn Scott's motions asking this Court to: (1) dismiss the Indictment as duplicitous; and (2) suppress all out-of-court identifications of Ms. Scott, or, alternatively, conduct a *Wade* hearing to determine the admissibility of the evidence at trial. (*See* Motion ("Mot."), ECF No. 22, at 7.) Ms. Scott's motions are DENIED.

## I.   FACTUAL BACKGROUND

Ms. Scott was an employee of New York City Housing Authority ("NYCHA") from at least 2019 to 2023. (("Compl."), ECF No. 1 at ¶¶ 7(a); 8(b).) The Government alleges that Ms. Scott, as a NYCHA employee, solicited and accepted a series of bribes from NYCHA vendors in exchange for "no-bid" contracts. (Indictment ("Ind."), ECF No. 10, at 1.) A "no-bid" contract allows NYCHA staff to award a contractor a certain contract agreement without requiring multiple competing bids. (Compl. at ¶ 6(d).) Since the beginning of the Government's larger investigation, several contractors have admitted to paying bribes to various NYCHA employees, including Defendant Scott.

## II.   PROCEDURAL BACKGROUND

On April 4, 2024, a federal grand jury returned an Indictment charging Ms. Scott with one count of solicitation and receipt of a bribe by an agent of an organization receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(B); and one count of extortion under color of official right in

violation of 18 U.S.C. § 1951. (Ind. at 1-2.) On April 25, 2025, Ms. Scott was arraigned on the Indictment and entered a plea of not guilty on all counts. (4/25/2024 ECF Entry.)

On July 28, 2025, Ms. Scott filed three pretrial motions: (1) a motion to dismiss the Indictment; (2) a motion to compel a bill of particulars from the government; and (3) a motion to suppress certain anticipated identification testimony. (Mot. at 7.) The Government opposed all three motions on August 26, 2025. (Government's Mem. in Opp. ("Opp."), ECF No. 25 at 4.)[1] On October 1, 2025, this Court heard oral argument, (10/01/2025 ECF Entry), and on October 6, 2025, this Court denied Ms. Scott's motion for a bill of particulars for the reasons stated at the oral argument. (Order, ECF No. 28, at 1.) Before this Court are Ms. Scott's remaining motions.

### III. MS. SCOTT'S MOTION TO DISMISS THE INDICTMENT IS DENIED

Rule 8(a) requires "separate counts" for each charged offense. Fed. R. Crim. P. 8(a). An indictment is therefore impermissibly duplicitous if it joins two or more distinct crimes in a single count and the defendant is prejudiced as a result. *United States v. Murray*, 618 F.2d 892, 896 (2d Cir.1980). The Second Circuit has held, however, that "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir.1989), *cert. denied*, 493 U.S. 1081 (1990).

Here, neither of the counts against Ms. Scott are impermissibly duplicitous because they are characterized as part of a single continuing scheme to extort and receive bribes from contractors. *Id.* Although Ms. Scott is alleged to have received bribes from multiple contractors, all transactions were done in similar amounts, locations, and payment methods, and with the same

---

[1] On the same day, the Government emailed Ms. Scott and this Court with a copy of the opposition along with various exhibits that included agent declarations and meeting notes.

purpose. In other words, even if Ms. Scott is alleged to engage in "multiple distinct acts involving different contractors over a three-year period" as she contends, (Mot. at 8), all acts were alleged to have been done with the intention of using her position of authority as a NYCHA employee to improperly solicit and receive funds for her personal benefit. Accordingly, because this is not "[a] duplicitous indictment, which alleges several offenses in the same count," it "must be distinguished from 'the allegation in a single count of the commission of a crime by several means.'" *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992).

In any event, even if the counts were impermissibly duplicitous, the Defense conceded during oral argument that "carefully crafted jury instructions and a verdict form with interrogatories" will sufficiently cure any potential jury prejudice. *United States v. Fofanah*, No. 24 CR. 85-2 (AT), 2025 WL 1151474, at *3 (S.D.N.Y. Apr. 18, 2025). Ms. Scott's motion to dismiss the Indictment as duplicitous is DENIED.[2]

### IV. MS. SCOTT'S MOTION TO SUPPRESS IDENTIFICATION EVIDENCE IS DENIED

Ms. Scott moves to suppress identification evidence from three contractors, arguing that the police identification procedures for the contractors were unduly suggestive.

#### 1. Factual Background

Several photo lineups were conducted by law enforcement. The photo array at issue, hereinafter the "Photobook," was created by Special Agent Karen Smith and "came to consist of

---

[2] This ruling reflects the precedent established by other judges in this District for similar NYCHA bribery and extortion cases. *See, e.g., United States v. Cartagena*, No. 24 CR. 516 (PGG), 2025 WL 1456097, at *6 (S.D.N.Y. May 21, 2025) ("Given that [Defendant] – in his capacity as superintendent of two NYCHA developments – is alleged to have received cash bribes from multiple contractors in similar percentages of the total contract value in exchange for awarding no-bid contracts, a reasonable jury could find that he committed these criminal acts as part of a continuing scheme."); *United States v. Gilmore*, No. 24-CR-127 (LJL), 2024 WL 3990604, at *2 (S.D.N.Y. Aug. 29, 2024) ("The Indictment is not impermissibly duplicitous under the law in the Second Circuit" because "the charges in the Indictment relate to a continuing scheme to extract bribes from contractors seeking NYCHA business.").

3

three binders totaling approximately 250 photographs." (Smith Decl. ¶ 3.) The Photobook included photographs of current and former NYCHA employees as well as approximately 40 "filler" photographs. (*Id.* at ¶ 4.) The number of photos fluctuated during the investigation as the Government discovered additional NYCHA employees or duplicates of already existing photos. (*Id.* at ¶ 3.)

As part of the Government's investigation, at least three contractors were asked by a special agent to look through the pictures and identify anyone that the witness may "recognize." (Ramirez Decl. ¶ 7; Doscher Decl. ¶ 6; Hughes Decl. ¶ 8.) Any identifying information corresponding to the photos was covered with Post-it notes. (Smith Decl. ¶ 5.)

A photograph of Ms. Scott was included on the page of the Photobook marked as "152." (*Id.* at ¶ 7.) From pages 1 to 152 of the Photobook, approximately eight of the photographs were "filler" photographs, 42 of the photographs appeared to be of women, and 110 photographs appeared to be of men. (*Id.* at ¶ 8.)

A. CW-2

Cooperating Witness 2 ("CW-2") is a contractor that performed work for NYCHA's Rangel houses through contracting companies (the "CW-2 Companies") beginning in or about July 2016. (Compl. at ¶ 8(a).) "The CW-2 Companies were awarded at least approximately five no-bid contracts at Rangel Houses from in or about May 2022 through in or about March 2023, during the time in which CAROLYN SCOTT, the defendant, served as a superintendent at that NYCHA facility." (*Id.* at ¶ 8(b).) It is alleged that CW-2 paid Scott for "at least approximately two of the no-bid contracts" that CW-2 received from Scott at Rangel houses. (*Id.*)

On May 26, 2023, CW-2's lawyer sent an email to the Government that included "the 14 names of supers we discussed to take or took 10-20% as kickbacks." (*See* Doscher Decl., Ex. B

4

("Email"), at 1.) The name "Carolyn Scott" was the twelfth number on the list. (*Id.*) About two months later, on July 26, 2023, Special Agent Decline Doscher displayed the Photobook to CW-2, who was present with counsel and an interpreter. (Doscher Decl. at ¶ 8.) Agent Doscher wrote a Memorandum of Interview ("MOI") about the meeting. (*See* Doscher Decl., Ex. A "July 2023 [CW-2] MOI" at 1.) According to the MOI, CW-2 stated that photo 152 was "Carolyn Scott from NYCHA's Rangel Houses." (*Id.* at 8.) Agent Doscher noted that CW-2 "worked with Ms. Scott" when working "[a]t NYCHA's Albany Houses [in 2019]." (*Id.* at 10.)[3]

CW-2 met with Agent Doscher again on August 2, 2023, and Agent Doscher wrote a second MOI about the meeting. (*See* Doscher Decl., Ex. E, the "August 2023 [CW-2] MOI" at 1.) In this MOI, Agent Doscher stated that in 2023, CW-2 again "worked with superintendent Caroline Scott . . . in NYCHA's Rangel Houses." and "paid [Ms. Scott] for all jobs [CW-2] performed in 2023." (*Id.* at 3.) CW-2 also had a contact saved on his phone under the name "Carolyn Scoott Super 2" that corresponded with Ms. Scott's phone number. (Compl. at ¶ 8(e).)

B. CW-24

A second contractor known as CW-24 admitted to performing contracting work for NYCHA since about 2019, and to paying bribes for at least five no-bid contracts received from Ms. Scott at the Dyckman Houses. (*Id.* at ¶ 9(a-b).)

CW-24's photo array procedure was independently conducted by Special Agent Rasove Ramirez on November 29, 2023. (Ramirez Decl. ¶ 3; 5; 12.) Agent Ramirez wrote a Memorandum of Interview ("MOI") about this meeting. (*See* Ramirez Decl., Ex. B, the "November 2023 [CW-24] MOI" at 1.) In the MOI, Ramirez created a list of "the individuals [CW-24] recognized and

---

[3] At a second meeting, CW-2 stated that he worked with Ms. Scott in NYCHA's Albany houses around 2019, but did not pay her at that time. (August 2023 [CW-2] MOI at 1.)

said [CW-24] paid. (*Id.* at 2.) There were 20 identified individuals on the list, including Ms. Scott as "Photo #152 – A super from the Dyckman Houses. [CW-24] could not remember [her] name." (*Id.* at 3.)[4]

### C. CW-3[5]

The Government identified a third witness (hereinafter referred to as "CW-3") who separately met with investigators on November 6, 2023. (Hughes Decl. at ¶ 12.) Special Agent Sean Hughes administered this procedure. (*Id.*) Agent Hughes also wrote a Record of Investigation ("ROI") for this meeting. (*See* Hughes Decl., Ex. A ("ROI") at 1.) The ROI reflects the following entry:

> [CW-3] stated that photo number 152 was the NYCHA superintendent at Rangal House. [CW-3] stated that this was CAROLINA or CAROLINE. [CW-3] stated [CW-3] paid CAROLINA 2 times at the Rangal Houses. [CW-3] stated that [CW-3] did work at CAROLINA's home in Pennsylvania on [R]oute 80 in lieu of 3-4 purchase orders that [CW-3] did not pay for. [CW-3] stated that [CW-3] remodeled her first floor and it cost between $3,000-$4,000. [CW-3] stated [CW-3] hasn't seen CAROLINA in several years. [CW-3] stated that [CW-3] only worked blanket contracts with NYCHA now.

(*Id.* at. 4.) Moreover, the ROI states that "[CW-3] paid CAROLINE at Rangal houses." (*Id.* at 6.)

### 2. Legal Standards

Due process protects criminal defendants from suggestive police identification procedures. *Simmons v. United States*, 390 U.S. 377, 384 (1968). A two-part inquiry is required to determine the reliability of identifications in criminal investigations. "First, the court must determine whether

---

[4]Although the original MOI uses the pronoun "his," Agent Ramirez later explains in his declaration that he believes this to be a typo. (*See* Ramirez Decl. ¶ 13.)

[5] Ms. Scott only addresses CW-2 and CW-24 in her motion, but generally refers to "three witnesses who purportedly identified Ms. Scott's picture." (Mot. at 21.) The Government also mentions an investigation by a "third contractor." (Opp. at 7.) This Court considers all known witnesses for the purposes of this motion.

the circumstances surrounding the witness' pre-court identification were unduly suggestive of the suspect's guilt." *Styers v. Smith*, 659 F.2d 293, 297 (2d Cir. 1981). "Second, the suggestiveness of the identification procedures must be balanced against factors indicating that the in-court identification was independently reliable." *Id.*

Eyewitness identifications should be excluded only where "improper police conduct" occurred that was "so [unnecessarily] suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Perry v. New Hampshire*, 565 U.S. 228, 238-9 (2012) (alteration in the original). Otherwise, the "[d]raconian sanction" of exclusion may not be considered, and the reliability of the identification evidence is for the jury to weigh. *Id.* at 239.

"A defendant who seeks to suppress an identification on the ground that it was obtained through impermissible police procedures is presumptively entitled to a *Wade* hearing to 'determine whether any police suggestiveness tainted the identification procedure.'" *Mack v. Collado*, No. 21-CV-8541 (KMK), 2023 WL 6200170, at *11 (S.D.N.Y. Sept. 22, 2023), *appeal dismissed*, No. 23-7538, 2024 WL 4653866 (2d Cir. Mar. 14, 2024). "A defendant is not entitled to a *Wade* hearing," however, "unless [s]he makes a 'sufficient pre-trial showing of impropriety' regarding the challenged identification evidence." *United States v. Durant*, No. 18 CR 702 (CM), 2019 WL 2236233, at *3 (S.D.N.Y. May 15, 2019). Moreover, "[a] defendant is entitled to an evidentiary hearing on a motion to suppress *only if* the defendant establishes a contested issue of material fact." *United States v. Tontisabo*, No. 21-CR-701 (LAK), 2023 WL 411622, at *5 (S.D.N.Y. Jan. 25, 2023) (emphasis added). The defendant's allegations must also be "definite, specific, detailed, and nonconjectural." *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (internal quotations and citations omitted).

### 3. Ms. Scott's Motion to Suppress Witness Identification Evidence is DENIED without a hearing.

Ms. Scott does not dispute the Government's alleged facts, nor does she articulate in what manner the identification procedures conducted by law enforcement were "unduly suggestive of the suspect's guilt." *Smith*, 659 F.2d at 297. Instead, Ms. Scott argues that the evidence of these three witnesses should be suppressed *because* the defense does not have enough information about the investigation. (Mot. at 23.) But it is insufficient for Ms. Scott to merely want more information. Instead, Ms. Scott "must make a threshold showing that the surrounding circumstances or actual conduct of the . . . photo-spread were suggestive." *United States v. Leonardi*, 623 F.2d 746, 755 (2d Cir. 1980).

Moreover, about a month after Ms. Scott filed her motion, the government provided discovery to Ms. Scott and this Court via email on August 26, 2025. (Opp. at 22-25.) This production included declarations, along with memoranda of interviews, of the relevant agents who administered the Photobook to the three witnesses. (*Id.*) Neither party disputed that the Photobook was comprised of over 250 photographs, including those of NYCHA employees and fillers, and was devoid of any identifying information. (Smith Decl. ¶ 3, 5.) Ms. Scott provides no additional evidence that would lead to the conclusion that the photo array which identified Ms. Scott, as one photo out of approximately 250, was intentionally manipulated to have her stand out from these numerous photos. Based on this information, the Photobook does not, on its own, make the requisite showing of suggestiveness because it does not "create[] a very substantial likelihood of irreparable misidentification." *Simmons*, 390 U.S. at 384.

Moreover, even if this Court were to find "that the procedures were suggestive," the witness identifications of Ms. Scott at trial may be "nonetheless independently reliable" if they were supported by a prior independent basis. *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001).

"That independent basis may derive from the witness's past relationship with the defendant or from the witness's observation of the crime." *Jimenez v. City of New York*, No. 23 CIV. 06751 (NRB), 2025 WL 935233, at *11 (S.D.N.Y. Mar. 27, 2025).

Here, all three witnesses admitted to working with, or at least knowing, Ms. Scott. Two months before the lineup, CW-2 wrote an email identifying Ms. Scott by name as a "super . . . who take[s] or took 10-20% as kickbacks." (*See* Email at 1.) CW-2 also had a contact on his phone named "Carolyn Scoott," with a number that matches Ms. Scott's. (Compl. at ¶ 8(e).) Similarly, CW-3 not only identified Ms. Scott by name, but also mentioned specific instances of paying Ms. Scott and even working at her home in Pennsylvania. (ROI at 4.) And even though CW-24 did not identify Ms. Scott by name, when asked to create a list of "the individuals [CW-24] recognized and said [CW-24] paid," CW-24 still identified "Photo #152 – A super from the Dyckman Houses." (Ramirez Decl., Ex. B, at 2-3.) In other words, by the time all three witnesses picked out Ms. Scott's photo from the Photobook, the selection was merely confirmatory. Because these identifications are reliable enough to be presented to a jury for its evaluation, there is no reason for this Court to engage in the "[d]raconian sanction" of fully excluding the identification evidence. *Perry*, 565 U.S. at 238.

Ms. Scott also does not demonstrate the necessity of a *Wade* hearing. She fails to provide this Court with "definite, specific, detailed, and nonconjectural allegations." *Pena*, 961 F.2d at 339. Nor does Ms. Scholl "establish[] a contested issue of material fact" based on the evidence provided by the Government. *Tontisabo*, 2023 WL 411622, at *5. Instead, Ms. Scott informs this Court, in a footnote, about a partial *Wade* hearing conducted in a related NYCHA case, *United States v. Cartagena*, 24 Cr. 516 (PGG). *Cartagena* similarly involved a NYCHA Employee, Special Agents Hughe, Smith, Doscher, and Ramirez, and two of the witnesses in this case. The

Court in *Cartagena* ordered a *Wade* hearing with the special agents because of "the inconsistencies between what is in the contemporaneous reports and what is in the declaration" of the special agents. 24-cr-516 Trans., ECF No. 85, at 189.[6] But the facts in *Cartagena* are inapposite to the facts here. Indeed, Ms. Scott does not identify any inconsistencies between the special agent reports and declarations, thus rendering *Cartagena*'s decision to conduct a partial *Wade* hearing immaterial to this case.

Instead, this case is more akin to *United States v. Small*, another NYCHA Employee case, where "[t]he Government has essentially provided all the information that would be revealed via a *Wade* hearing, and [Ms. Scott] still cannot point to any specific conduct or circumstance that reaches the threshold showing of suggestiveness to warrant suppression or a hearing." No. 24-CR-208 (VEC), 2025 WL 2793638, at *2 (S.D.N.Y. Oct. 1, 2025).

Ms. Scott's submission is insufficient as a matter of law to establish that the Photobook array violated the Fourth Amendment. And because Ms. Scott has not alleged any relevant facts in support of her motion, there is no dispute necessitating a hearing.

---

[6] After hearing from the law enforcement witnesses at a *Wade* hearing in *Cartagena*, the Court ordered that the contracting witnesses testify at the continued *Wade* hearing. 24-cr-516 Trans., ECF No. 85, at 190. The Court did not, however, make a determination about the suggestiveness of the photo array procedures because the defendant plead guilty prior to the completion of the *Wade* hearing.

## V. CONCLUSION

Ms. Scott's motions asking this Court to dismiss the Indictment, suppress certain identification evidence, and conduct a *Wade* hearing are DENIED.

Dated: October 30, 2025
      New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge